UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FERRARI CLUB OF AMERICA, INC.,

                    Plaintiff,

        -vs-                                   **No. 6:12-CV-6530(MAT)**
                                               **DECISION AND ORDER**
LEON BOURDAGE,

                    Defendant.

---

## INTRODUCTION

The Ferrari Club of America, Inc. ("Plaintiff" or "the FCA")
commenced this action on October 2, 2012, seeking damages against
Leon Bourdage ("Defendant" or "Bourdage") in excess of $450,000 for
breach of fiduciary duty, unjust enrichment, and conversion, based
on its allegations that from 2007 to 2011. The FCA alleges that
Bourdage, as a member of the FCA's Empire State Region ("ESR"),
misappropriated money from two bank accounts owned by the FCA and
managed by Bourdage. In essence, the FCA accuses Bourdage of using
FCA-funds to pay for personal expenses unrelated to the FCA or the
various events held by the FCA.

## FACTUAL BACKGROUND

### The FCA Bank Accounts

Bourdage was a member of the FCA from approximately 1988 until
approximately 2010. In 2007, the ESR, comprised of FCA members
living in New York State, hosted the FCA's Annual Meet. Bourdage
was the Chairperson of the 2007 Annual Meet. Pursuant to the FCA's
customs and practices, a separate checking account is opened for

each year's Annual Meet and is kept separate from the host Region's general checking account. In April of 2007, Bourdage opened a checking account at Elmira Savings Bank for the 2007 Annual Meet (the "Annual Meet Account").

From August 29, 2007, through September 2, 2007, the Annual Meet was held in Watkins Glen and Corning, New York. Pursuant to the FCA's customs and practices, an Annual Meet bank account is required to be closed within a reasonable amount of time after the event is concluded. The FCA asserts that Bourdage did not close the Annual Meet Account following the conclusion of the 2007 Annual Meet. Bourdage counters that the FCA's Executive Director Patricia Current, agreed to allow him to keep the Annual Meet Account open to continue to develop "The Art of Ferrari" event that he allegedly created in 2001. Starting in approximately October of 2008, Bourdage used the 2007 Annual Meet Account as a personal checking account. See Deposition of Leon Bourdage ("Bourdage Dep.") at 258:18-24. The parties dispute whether the 2007 Annual Meet's finances ever were reconciled. Bourdages asserts that they were, and that all of the Event's expenses had been paid and Event income stopped at the time he began using the 2007 Annual Meet Account as a personal account. The FCA contends that 2007 Annual Meet Account never was reconciled.

In early 2009, Bourdage was appointed to be the Regional Director of the ESR. Typically, each FCA Region has a checking

account that contains the Region's entire treasury, and any income and expenses for the Region are deposited into, and paid out of, that account. In early 2009, Bourdage opened a checking account at Elmira Savings Bank (the "ESR Account") to serve as the ESR's general account during his tenure as Regional Director. At that time, the ESR's previous Regional Director, Robert Coates, transferred $70,000 to him, which Bourdage deposited into the ESR Account. The FCA asserts that while Bourdage was Regional Director, he was the only individual who ever deposited or withdrew funds from the ESR Account. Bourdage contends that the ESR Treasurer at that time, Pat Scopolleti, also deposited monies into the ESR Account.

In early 2011, at the conclusion of his two-year term as Regional Director, Bourdage was replaced by Roland Veit. As part of the transition, Bourdage provided approximately $3,000 in cash to Veit and Ben Roter, the new treasurer.

## The Outside Accountant's Review and Compilations of the Accounts

In 2012, at the request of the FCA's General Counsel, John Hurabiell, Shawn Gregory, CPA, conducted a review and compilation of the 2007 Annual Meet Account for the years 2007 through 2011. E.g., Gregory Dep. 116:5-21. Following the completion of his review, Gregory prepared a written report of his findings. See Hurabiell Dep., Exhibit ("Ex.") 15. Gregory's findings included the following irregular transactions during 2007 through 2011:

(I) Bourdage wrote $95,000-worth of checks from the 2007 Annual Meet Account, payable to himself and to his jewelry business; (ii) Bourdage withdrew approximately $112,000 from the 2007 Annual Meet Account by writing checks payable to "Cash" or by making ATM withdrawals; (iii) Bourdage utilized the 2007 Annual Meet Account for various miscellaneous expenses, including $30,000-worth of transactions at convenience stores, gas stations, restaurants, Wal-Mart, and Sam's Club, as well as loan payments, postage expenses, and travel expenses; (iv) Bourdage utilized the 2007 Annual meet Account for various personal expenses, including $59,000-worth of transactions for auto repair, gifts, jewelry, private school tuition and medical expenses.

Gregory also conducted a review and compilation of the ESR Account for the years 2007 through 2010. Gregory identified a number of irregular transactions, including checks that Bourdage had written to himself or to his jewelry business and unsubstantiated cash withdrawals. Bourdage did not respond to Gregory's request for documentation in regards to the transactions identified as irregular. Following the completion of his review, Gregory prepared a written report. See Ex. 14 to Hurabiell Dep.

The Corning Enterprises Sponsorship Money

From 2006 to 2011, Corning Incorporated donated approximately $80,000 to the FCA through its sponsorship of various events, including the 2007 Annual Meet. All of those funds were deposited

into Bourdage's business account (rather than an FCA or ESR account). According to Thomas Tranter, President of Corning Enterprises, all of the funds given by Corning to Bourdage were intended to sponsor FCA events, and were in no way intended to benefit Bourdage or his business. See Tranter Dep. at 7:7-24; 8:1-18; 11:6-16; 53:13-24; 54:1-4; 101:9-21.

**PROCEDURAL STATUS**

The FCA filed its Complaint in this Court on October 2, 2012, asserting causes of action for breach of fiduciary duty, unjust enrichment, and conversion, and seeking compensatory damages and punitive damages. Bourdage answered the Complaint pro se, but subsequently retained the firm of Lipsitz Scime Green Cambria LLP to represent him. The parties conducted discovery and attempted mediation, which was unsuccessful.

On August 13, 2013, the FCA filed an Amended Complaint (Dkt #27), reasserting the three causes of action from the original Complaint, and adding causes of action for fraud, an accounting, and a constructive trust. Bourdage, through his attorney, filed an Answer with Counterclaim, asserting a statute of limitations defense with regard to almost all the claims, as well as other equitable defenses. Bourdage also asserted a counterclaim alleging that the FCA did not reimburse him for all of the personal monies he expended while managing and organizing FCA events. The FCA filed

a Reply and Affirmative Defenses to Counterclaim on September 10, 2013.

On December 4, 2013, Bourdage's attorneys filed a Motion to Withdraw based upon his continued nonpayment of legal fees owed to them. The Court (Payson, M.J.) granted the motion, and Bourdage did not retain another attorney.

On October 10, 2014, the FCA filed a Motion for Summary Judgment (Dkt ##47-49). Bourdage filed opposition papers (Dkt #55), and the FCA filed a Reply (Dkt #53). For the reasons discussed below, Plaintiff's motion for summary judgment is denied.

## SUMMARY JUDGMENT STANDARD

A district court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" factual dispute arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "In ruling on a motion for summary judgment, the district court must resolve all ambiguities, and

credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." <u>Cifra v. General Elec. Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001) (citing <u>Anderson</u>, 477 U.S. at 249; <u>Matsushita Elec. Indus. Co., Ltd.</u>, 475 U.S. at 587).

**DISCUSSION**

**I.   The Breach of Fiduciary Duty Claims**

The FCA's first cause of action alleges that Bourdage, during his term as Regional Director of the ESR, breached his fiduciary duty to the FCA. <u>See</u> Amended Complaint ("AC") ¶¶ 23-26. The Court first addresses the statute of limitations defense with regard to transactions occurring prior to October 2, 2009; and then discusses whether the FCA has demonstrated entitlement to judgment as a matter of law regarding its breach of fiduciary duty claim based on transactions occurring after October 2, 2009.

**A.   Timeliness of Claim Based on Transactions Prior to October 2, 2009**

Bourdage asserts that even if the FCA were able to establish that he misappropriated money from its bank accounts, it is barred from recovering damages for many of the challenged transactions as they are outside the applicable statute of limitations. Bourdage correctly notes that under New York law, breach of fiduciary duty claims are not covered by a single statute of limitations; instead, "the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." <u>IDT Corp. v. Morgan Stanley Dean Witter & Co.</u>, 12 N.Y.3d 132, 139 (2009) (citation

omitted). Where the remedy sought is "purely monetary", the claim is construed as alleging an "injury to property" within the meaning of New York Civil Practice Law & Rules ("C.P.L.R.") § 214(4), which has a three-year limitations period. Id. (citation omitted). Where the relief sought is equitable in nature, a six-year limitations period applies. Id. (citation omitted). Bourdage argues that because the FCA seeks purely monetary damages, the three-year limitations period applies.

The Court agrees that the FCA solely seeks monetary relief, as evidenced by its prayer for relief seeking compensatory damages "in excess of $450,000 plus interest, for each and every one of the causes of action" and "punitive damages[.]" AC, p. 6. Therefore, application of the three-year statute of limitations is proper. See, e.g., Cooper v. Parsky, 140 F.3d 433, 440-41 (2d Cir. 1998) ("[U]nder New York law, a claim for breach of fiduciary duty would be governed by a three-year limitations period if the action sought monetary relief. . . ."). Applying the three-year period to the FCA's Complaint (Dkt #1), which was filed on October 2, 2012, any breach of fiduciary duty claim based on transactions occurring prior to October 2, 2009, are time-barred. See Glynwill Investments, N.V. v. Prudential Securities, Inc., No. 92 Civ. 9267(CSH), 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1997) ("Since plaintiff did not file the complaint in this action until December 23, 1992, its claims for an accounting, fraud, and breach

of fiduciary duty arising from trades executed before December 23, 1986 are untimely. The breach of fiduciary duty claim is untimely in its entirety since all of the trades occurred more than three years before the complaint was filed.").

In their reply brief, the FCA does not address Bourdage's argument based on the statute of limitations. Nor does the FCA argue that the limitations period should be equitably tolled. Because the FCA has not addressed Bourdage's argument that its breach of fiduciary claims based on transactions occurring prior to October 2, 2009, are untimely, the FCA has abandoned any objections to that argument. E.g., Dudek v. Nassau Cty. Sheriff's Dept., 991 F. Supp.2d 402, 410 (E.D.N.Y. 2013) (citing Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F. Supp. 895, 907 n. 11 (S.D.N.Y.), aff'd, 130 F.3d 1101 (2d Cir. 1997) (per curiam); other citation omitted).

**B.   Breach of Fiduciary Claim Based on Transactions After October 2, 2009**

The elements of a claim for breach of fiduciary duty under New York law are as follows: (1) a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; and (3) damages resulting from the breach. E.g., Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986). To determine whether a fiduciary relationship exists between two parties, "New York law inquires whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the first." Teachers Ins. & Annuity Assoc. of Am.

v. Wometco Ent., Inc., 833 F. Supp. 344, 349-50 (S.D.N.Y. 1993) (citations omitted). Stated somewhat differently, a fiduciary relationship exists under New York law "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of relation." Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991) (quotation omitted); see also Teachers Ins. & Annuity Assoc. of Am., 833 F. Supp. at 350 ("[T]he Restatement of Agency defines a fiduciary as one 'having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.'") (quoting Restatement (Second) of Agency § 13 cmt. a (1957)).

The FCA alleges that it entrusted Bourdage with managing the FCA's financial accounts (i.e., the ESR Account and the Annual Meet Account) for the benefit of the FCA. Therefore, the FCA asserts, there existed a fiduciary relationship between it and Bourdage based on its trust in Bourdage to manage its accounts and funds. In opposition, Bourdage argues that the FCA had no written rules or guidelines for, inter alia, the management of its regions or its finances. Bourdage asserts in his memorandum of law that when he was Regional Director of the ESR, he was never given any instruction or guidelines on running the region and its activities and finances. As Bourdage points out, the outside accountant hired by FCA stated in one of his reports that "there are no formal procedures in place as to what expenses are considered necessary

and authorized for reimbursement to Regional Directors and other club officials." The accountant recommended that the "national organization [i.e., the FCA] consider creating a training manual for the Regional Directors and Treasurers explaining the fiduciary responsibility those positions have with regards to regional finances and the members."

Under New York law, "[t]he fiduciary duties of care, loyalty and obedience are the legal standards that govern the conduct of not-for-profit boards and individual directors in their day-to-day relationship to the organizations they serve." Consumers Union of U.S., Inc. v. State, 5 N.Y.3d 327, 370-71 (2005) (citing N.Y. NON-PROFIT CORP. LAW § 717(a) ("Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."); footnote omitted). Although the FCA is apparently a non-profit corporation, it is unclear whether Bourdage, in his various positions as Chairperson of the Regional Meet and as the Regional Director of the ESR, was a "director" or "officer" of the FCA, as that term is defined under New York law. The FCA has not cited to its by-laws, articles of incorporation, or similar documents that would provide the Court with clarification on the nature of the positions held by Bourdage or the roles and responsibilities of FCA members holding those positions. Therefore, on the present record,

the Court cannot find that the FCA is entitled to judgment as a matter of law based on its breach of fiduciary duty claim insofar as such a claim relates to transactions occurring on or after October 2, 2009.

### B.   Unjust Enrichment

Plantiff's second cause of action is based on a theory of unjust enrichment and alleges that "Bourdage unjustly enriched himself to the FCA's detriment and holds benefits derived from that unjust enrichment." AC ¶ 29. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched; (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004) (citation omitted). The FCA alleges that Bourdage was enriched by his unauthorized use of the FCA's bank accounts and funds for his own personal benefit. For example, the FCA alleges that Bourdage accepted more than $80,000 in funds from Corning that were intended for the FCA's use, and instead spent those monies on his personal uses. See Tranter Dep., Exs. 92-102. In addition, the FCA states, Plaintiff wrote numerous checks to himself from the FCA's accounts, and used these checks to pay for personal expenses, including tuition for his children, the purchase of an automobile for his

personal use, and non-business travel. See Hurabiell Dep. at 269:2-
23; 270:1-3; 282:12-23 & Exs. 12, 14-15.

Bourdage argues that an unjust enrichment cause of action is
not available because an adequate remedy at law exists through the
FCA's breach of fiduciary duty or conversion claims. Bourdage also
asserts that the FCA's unjust enrichment cause of action is
improperly duplicative of its claims based on contract or tort
theories. In response, the FCA argues that its breach of fiduciary
duty claim seeks damages resulting from Bourdage's mismanagement of
the ESR and 2007 Annual Meet Accounts by failing to substantiate
withdrawals, and failure to provide accurate accountings[,] while
its unjust enrichment claim arises mainly from Bourdage's
acceptance and unauthorized use of more than $80,000 from Corning
Enterprises that was intended for the FCA's use. This is by no
means clear from the Amended Complaint, however, which simply
asserts that Bourdage "intentionally participated in a scheme,
plan, and/or purpose to unjustly enrich himself to the FCA's
detriment" and does not provide any other specifics.

As the New York Court of Appeals has explained, "unjust
enrichment . . . is available only in unusual situations when,
though the defendant has not breached a contract nor committed a
recognized tort, circumstances create an equitable obligation
running from the defendant to the plaintiff." Corsello v. Verizon
N.Y., Inc., 18 N.Y.3d 777, 790 (2012). In a typical unjust

enrichment case, the defendant, "though guilty of no wrongdoing, has received money to which he . . . is not entitled." Id. This case does not present the "unusual" circumstances supporting an unjust enrichment claim, given the FCA's allegations that Bourdage is in fact guilty of multiple instances of wrongdoing. See Miller v. Wells Fargo Bank, N.A., 994 F. Supp.2d 542, 557 (S.D.N.Y. 2014) (dismissing unjust enrichment claim where plaintiff alleged defendants unjustly enriched themselves by providing grossly overpriced force-placed insurance policies and by "backdating" policies; "[t]hese allegations undermine[d] any claim by plaintiff that the [defendants] are "'guilty of no wrongdoing'") (quoting Corsello, 18 N.Y.3d at 790). Moreover, the FCA's unjust enrichment claim is based on the same allegations supporting its claims for breach of fiduciary duty and conversion, namely, that Bourdage repeatedly misappropriated monies belonging to the FCA. See Corsello, 18 N.Y.3d at 790 ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.") (citations omitted). For these reasons, summary judgment in Plaintiff's favor is unwarranted on the unjust enrichment claim.

### C. Conversion

The FCA's third cause of action, for conversion, alleges that Bourdage "intentionally and willfully misappropriated funds from the General Account and the Annual Meet Account which rightfully

-14-

belonged to the FCA and which he converted to his own use and to his own account." AC ¶ 31. Under New York law, to maintain a tort action for conversion, "a plaintiff must show legal ownership of, or a superior possessory right in, the disputed property, and 'that the defendant exercised an unauthorized dominion over that property, . . . to the exclusion of the plaintiff's rights.'" Middle East Banking v. State St. Bank Int'l, 821 F.2d 897, 906 (2d Cir. 1987) (quotation and citations omitted; ellipsis in original). When the defendant's original possession of the property is lawful, "'conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property.'" Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993) (quotation omitted). Although a conversion action is unavailable to enforce a simple obligation to pay money, see Ehrlich v. Howe, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases), "an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question[.]" Manufacturers Hanover Trust Co. v. Chemical Bank, 160 A.D.2d 113, 559 N.Y.S.2d 704, 712 (1st Dep't 1990). Conversion does not require a "'defendant's knowledge that he is acting wrongfully[.]'" LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997) (quotation omitted).

Plaintiff argues that the specific, identifiable funds in this case are the monies that were deposited into the Annual Meet Account and the ESR Account, which Bourdage had an obligation to use for the benefit of the FCA. Plaintiff asserts that "in derogation of this obligation, Bourdage used and withheld the funds for his own personal benefit." Plaintiff's Memorandum of Law (Dkt #48) at 14 (citing Bourdage Dep. at 258:18-24, 259:22-26, 260:2-6). However, the transcript pages cited at page 14 of Plaintiff's Memorandum of Law are not contained in the exhibit that the FCA indicates is comprised of excerpts from the transcript of Bourdage's deposition, taken on September 6, 2013. See Declaration of Edward P. Hourihan ("Hourihan Decl.") ¶ 20. Because Plaintiff has not included the cited pages from Bourdage's deposition in its submissions to the Court, the Court is unable to verify whether Bourdage's testimony at pages 258 to 260 of his deposition stand for the proposition urged by the FCA.

Bourdage's counter-argument is similarly deficient in record support. He contends that the FCA has failed to show the source of the monies that were in the FCA's Event Account, after the 2007 Event ended and the account was reconciled. Defendant's Memorandum of Law (Dkt #55-1), p. 3 of 4. According to Defendant, all of the money that was deposited into the Event Account, after the account was reconciled, actually belonged to him, which he purports to "show with documentation of their sources, into an account [he] was

given permission to use." Id. However, Bourdage does not provide any citations to any specific exhibits to substantiate this statement.

At this juncture, the record is insufficient for the Court to grant judgment as a matter of law either to the FCA or to Bourdage on the conversion claim.

**D.    Fraud**

The Court notes that Plaintiff has not moved for summary judgment on its cause of action for fraud. Although "a district court's independent raising and granting of summary judgment . . . is 'an accepted method of expediting litigation.'" Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996) (quotation omitted), the Court declines to do so here given that the record does not "clearly establish both 'the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment." Ramsey, 94 F.3d at 74 (quotation omitted).

**E.    Equitable Accounting**

"The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." Lawrence v. Kennedy, 95 A.D.3d 955, 959 (2d Dept. 2010). "To be entitled to an equitable accounting, a claimant must demonstrate that he or she has no

-17-

adequate remedy at law." <u>Unitel Telecard Distribution Corp. v.
Nunez</u>, 90 A.D.3d 568, 569 (1st Dept. 2011).

As discussed above, the Court has declined to rule as a matter
of law that there existed a confidential or fiduciary relationship
between Bourdage and the FCA. Accordingly, it would be premature
for the Court to rule as a matter of law the FCA is owed an
equitable accounting. The FCA's motion for summary judgment on this
basis is denied without prejudice.

**F.   Constructive Trust**

The elements generally required for establishment of a
constructive trust are as follows: "'(1) a confidential or
fiduciary relation, (2) a promise, (3) a transfer in reliance
thereon and (4) unjust enrichment.'" <u>Counihan v. Allstate Ins. Co.</u>,
194 F.3d 357, 361-62 (2d Cir. 1999) (quoting <u>Sharp v. Kosmalski</u>, 40
N.Y.2d 119, 123 (1976)).  Courts in New York State "insist upon .
. . a showing that property is held under circumstances that render
unconscionable and inequitable the continued holding of the
property and that the remedy is essential to prevent unjust
enrichment." <u>Id.</u> at 362.

For the same reasons that the Court declines to rule as a
matter of law the FCA is owed an equitable accounting, the Court
likewise declines to impose a constructive trust at this stage of
the proceeding.

**CONCLUSION**

For the reasons discussed above, Plaintiff's motion for summary judgment is denied without prejudice. However, Plaintiff's motion for summary judgment is denied with prejudice as to the cause of action for breach of fiduciary duty to the extent that the the claim is based on transactions occurring prior to October 2, 2009, because those transactions are outside the three-year statute of limitations.

**SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 15, 2015
          Rochester, New York