UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FERRARI CLUB OF AMERICA, INC.,

                Plaintiff,

      v.

LEON BOURDAGE,

                Defendants.
_____

**DECISION AND ORDER**

6:12-CV-06530 EAW

### INTRODUCTION

Defendant Leon Bourdage ("Defendant") has filed a motion *in limine* to exclude the testimony and reports of Shawn Gregory. (Dkt. 97). The Ferrari Club of America, Inc. ("Plaintiff" or "FCA") intends to present Mr. Gregory to provide testimony at trial. (*See* Dkt. 77; Dkt. 79 at 4-5). Mr. Gregory is a certified public accountant retained by Plaintiff to "perform financial audits of two separate bank accounts [to which] Defendant had access [ ] during his tenure as Chairperson of the 2007 National Meet, and as Chairman of the FCA's Empire State Region ("ESR") from 2009-2010." (Dkt. 79 at 5). Plaintiff anticipates that Mr. Gregory will testify as to the "procedures he employed in gathering relevant information and documentation in connection with the financial audits, along with his findings and conclusions." *Id.* He will also testify about "Defendant's failure to cooperate with his efforts to obtain relevant information and documentation in connection with the aforementioned financial audits." *Id.* For the reasons set forth below,

-1-

this Court finds that Mr. Gregory may testify as a lay witness and he may testify as a summary witness. However, he may not provide expert testimony.

## DISCUSSION

### I. The Majority of Mr. Gregory's Testimony is not Lay Testimony

Federal Rule of Evidence 701—Opinion Testimony by Lay Witnesses—provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Subsection (c) was appended in 2000 and the Rule was "amended to eliminate the risk that the reliability requirements set forth in Rule 702 [Testimony by Expert Witnesses] [would] be evaded through the simple expedient of proffering an expert witness in lay witness clothing." Fed. R. Civ. P. 701 advisory committee's note to 2000 amendment. Under this new version of the Rule, "if an 'opinion rests "in any way" upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701.'" *DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378, 381 n.3 (2d Cir. 2012). Thus, to qualify under Rule 701, the opinion should be based on the "reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005).

Here, Mr. Gregory characterized the reports he was asked to compile (the "Gregory Reports"[1]) as "a little bit different" from typical bookkeeping. (Dkt. 97-4 at 6). He stated that it was a "write-up of taking financial information and putting it into a financial statement format, balance sheet, profit and loss, and then . . . as best [he] could, determining the expenses and categorizing them and then providing information to the executive committee as far as [his] findings." (*Id.* at 6-7). He described this project as "a little more detailed than what [he does] for other businesses" because he was "asked to analyze a little bit more [due to] the fact that [he was not] provided any information, any receipts, so [he] had to provide [his] professional opinion." (*Id.* at 7). Mr. Gregory's professional opinion as a certified public accountant is not an opinion formed on the basis of reasoning processes familiar to the average person. *See, e.g., Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 529 (S.D.N.Y. 2002) (finding that an accountant's statement beginning with "In my understanding as a Texas certified public accountant . . ." was "clearly an opinion based upon his expert knowledge."). Other excerpts from Mr. Gregory's deposition[2] indicate as much as well. For example, Mr. Gregory categorized four transactions relating to telephone charges as suspect because they were inconsistent:

---

[1] The Gregory Reports refers to the December 1, 2011 report regarding his review of the ESR from January 1, 2007 through December 31, 2010 ("ESR Report") and the February 21, 2012 report regarding the ESR Annual Meet from March 1, 2007 through March 31, 2011 ("Annual Meet Report").

[2] The Court was able to shorten the exhibit containing Mr. Gregory's deposition testimony by 50% simply by removing duplicate pages. The exhibit was also not in any appreciable order, forcing the Court to go through and order the exhibit itself.

> Q. If you look at the next page for telephone, this is on P000603, it looks like there are four separate transactions that were identified in the report, and I assume these were put in the report because there was no documentation substantiating the expense, correct?
>
> A. There's no documentation, plus they are so inconsistent, there were only four of them in four years, that it seemed out of line to have telephone expense running through the club.
>
> Q. So you took into consideration that there wasn't a—like a monthly or weekly-type payment, it was kind of spread out?
>
> A. I definitely took into account that it wasn't a monthly transaction, that the region seemed to have that expense.
>
> Q. Okay.
>
> A. Again, if documentation was provided, we might not be having this discussion.

(Dkt. 97-4 at 40-41). It is not apparent to the Court that the average person, with no accounting experience, would have known or thought—from looking only at a slew of bank statements—to consider that phone transactions likely should have occurred monthly or weekly and thus conclude that such transactions might be suspect.

However, this does not necessarily mean that all of Mr. Gregory's proposed testimony is impermissibly expert in nature. In *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004), the court found that a lower court's admission of lay testimony of a bank employee as to the fact that certain transactions "did not comport with the business community's understanding of normal, true, trade transactions between a buyer and seller," how a trust receipt works "in the context of an international commercial transaction," and that it is considered fraudulent when "an importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods involved,"

-4-

was permissible in part. *Id.* at 180. There, the employee was not precluded from giving lay testimony "so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise in international banking." *Id.* at 181. But, "to the extent [the employee's] testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was in error." *Id.* at 182. Thus, the employee's "explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted." *Id.*

Similarly in *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007):

> the Circuit affirmed criminal convictions after a trial in which Judge Sand of the district court had permitted the introduction of testimony by Robert DiBella, a forensic accountant retained by [the company's] new management to examine [the company's] books and records, and to investigate transactions that had been entered into while [the company] was operating under the [the family-owners'] watch. Citing *Bank of China*, the *Rigas* court found the testimony admissible, as it was based on witness perception, and did not materially involve specialized knowledge with respect to the particular issues on which he was testifying. That was so even though the Second Circuit's decision at least implied . . . that Mr. DiBella's witness perception—*i.e.*, his ability to observe—was materially assisted by his accounting expertise.

*In re Perry H. Koplik & Sons, Inc.*, 382 B.R. 599, 602 (Bankr. S.D.N.Y. 2008). In *Rigas*, the accountant had been employed full-time for approximately 20 months prior by the company to examine the state of the company's books. *Rigas*, 490 F.3d at 223. The *In re Perry H. Koplik* court used these two decisions to hold that a certified turnaround professional and certified public accountant could testify as a lay witness as to:

*what happened* (including, *inter alia,* what the defendants *did*)—even if [the witness] was aided in forming his perceptions by an ability, aided by his training and experience, to understand what he saw. But to the extent [the witness] [sought] to testify not with respect to his perceptions, but rather with respect to views as to (a) whether what he perceived was right or wrong; (b) what *should have been done;* (c) what is customary in business practice; or (d) what his training and experience tell him about appropriate conduct in these cases, the testimony [would] be excluded.

*Id.* at 603 (emphasis in original).

In coming to this conclusion, the court distinguished decisions from other circuits standing for the proposition that "persons outside of a business, including attorneys and financial consultants, are not able to establish the requisite foundation of personal knowledge and may not offer a lay opinion as to value or lost profits of a business." *Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, No. 02-01265, 2008 WL 65603, at *7 (W.D. Pa. Jan 4, 2008); *see DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-86 (5th Cir. 2003) (finding a financial consultant testifying on lost profits, where he had little "actual knowledge" about the company and its operations, relied on information provided by the plaintiff's founder rather than "on his own independent knowledge or observations," and who "was never employed by or directly involved in [the] business," was "unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits," and thus, that his testimony was inadmissible under Rule 701); *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 525-26 (6th Cir. 2004) (relying on *DIJO* in finding that, because a certified public accountant/lawyer testifying on the lost profits and loss of business value suffered as a result of a contract breach had "never been an owner, officer or director of JGR" and relied on information that "came primarily

from [the business's main principal]"—much of which the witness had not independently verified—the lower court had erred in allowing the witness to offer lay testimony). The *In re Perry H. Koplik* court noted that "lost profits and/or the value of a business—areas where an outsider's personal perception would often be modest at best, and that traditionally would involve testimony of bona fide experts, except in cases where the actual owner of the business might have the requisite personal perception," differs from "testimony of a trained financial professional who ha[s] studied financial transactions and reported on what he saw." *In re Perry H. Koplik*, 382 B.R. at 603-604.

This Court does not necessarily agree with the distinction, enumerated in *In re Perry H. Koplik*, between testifying as to lost profits and testifying as to a study on financial transactions performed by a trained professional, but agrees with the takeaway from the decision as it pertains to what a lay versus expert witness may testify to.[3] *See id.* at 602. The *Bank of China* court stated that the employee's opinion testimony was "admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness ha[d] *by virtue of his [] position in the business.*" *Bank of China*, 359 F.3d at 181 (emphasis added). Similarly, in *Rigas*, the forensic accountant had undisputed personal knowledge of the company's books because he had worked as a full-time company employee for approximately 20 months during which time he had developed "what he characterized as 'fairly extensive knowledge of the debt area of [the company].'" *Rigas*, 490 F.3d at 223. These witnesses' positions within their respective companies are more similarly likened

---

[3] That is, the above-quoted holding in *In re Perry H. Koplik*.

to the category of owner/officer/director or one "employed by or directly involved in [the] business" called for by *DIJO* and *JGR* than the "trained financial professional who ha[s] studied financial transactions and report[s] on what he [sees]" described in *In re Perry H. Koplik*. In other words, this Court reads *DIJO* and *JGR* as consistent with *Bank of China* and *Rigas*, but simply coming to different conclusions based on the differing facts presented in those cases.

Bolstering this position is the observation made in *E. Point Sys., Inc. v. Maxim*, No. 3:13-cv-00215 (VAB), 2015 WL 8023569, at *2-3 (D. Conn. Dec. 4, 2015): "in cases where accountants were allowed to testify as fact witnesses, the accountants were personally familiar with the relevant business's records, or the accounting of the transactions at issue." *Id.* (collecting cases) (finding that, because it appeared the accountant-witness at issue "was not employed by the [p]laintiffs and was not personally involved with the compilation or maintenance of the [p]laintiffs' financial records during the relevant time periods," he could likely not testify as a fact witness).

Here, Mr. Gregory has been employed on a month-to-month basis by Plaintiff since May 2010 to perform bookkeeping, accounting, and taxes. (Dkt. 97-4 at 2-3). He was not an employee of Plaintiff concurrently with most of the time period at issue in this trial, and he is not even technically an employee now. Though in *Rigas*, the forensic accountant was not an employee concurrently with the actions and transactions at issue, he became intimately familiar with the pertinent transactions during the subsequent 20 months of his employment with the company. However, here, just because Mr. Gregory has been a bookkeeper and accountant since 2010, that does not mean he is likely to have

delved into company records from before 2010—that is, most of the records pertinent to this case. That effectively makes Mr. Gregory an outside accountant with respect to the transactions from the relevant timeframe. Also, like in *DIJO* and *JGR*, the financial statements Mr. Gregory prepared "were prepared from information provided by the organization," rather than from information with which he was already intimately familiar. (Dkt. 92-3 at 2, 23). These factors cut against Mr. Gregory's proposed testimony being characterized as lay testimony.

Plaintiff also argues that Mr. Gregory will testify only as to "common sense" categorizations he created in reviewing the financial records, "without relying on his professional expertise as a CPA to conclude what was proper or improper." (Dkt. 104 at 11). But this is directly at odds with Mr. Gregory's deposition testimony stating that he "had to provide [his] professional opinion" given the fact that he was not provided with receipts or other information. (Dkt. 97-4 at 7). Likewise, certain statements in his reports go beyond what *happened* and tread into the territory of his views on whether these transactions were right or wrong and what his training tells him was appropriate or inappropriate. *See In re Perry H. Koplik*, 382 B.R. at 603. For example, in the ESR Report, Mr. Gregory includes a page entitled "Summary of Questionable Expenses." (Dkt. 92-3 at 4). Similarly, in the Annual Meet Report, he states: "After reviewing the bank activity for a four year period from 2007 through March 2011, I conclude that Mr. Bourdage used Ferrari Club of America assets for his own personal benefit." (Dkt. 92-3 at 25). Because Mr. Gregory was not an employee of Plaintiff and does not have firsthand knowledge of and/or was not involved in the compilation of the records he

reviewed, and because some of his proposed testimony definitively crosses into expert territory, the Court finds that the majority of Mr. Gregory's testimony impermissible as lay testimony.[4]

## II. Mr. Gregory May Not Testify as a Late Noticed Expert

As discussed at the April 20, 2017 hearing before the undersigned, Mr. Gregory will not be permitted to testify as a late noticed expert witness. Fed. R. Civ. P. 37(c)(1) provides, in part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P 37(c)(1). The question, then, is whether the omission was substantially justified or harmless. "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Coene v. 3M Co.*, 303 F.R.D. 32, 44 (W.D.N.Y. 2014) (citation omitted). "'Harmlessness' in the context of Rule 37(c)(1) 'means an absence of prejudice to the defendant.'" *Markey v. Lapolla Indus., Inc.*, No. 12-CV-4622(JS)(AKT), 2016 WL 324968, at *7 (E.D.N.Y. Jan. 26, 2016) (quoting *Ritchie Risk-Lined Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)). Here, the omission was neither substantially justified nor harmless.

---

[4] This finding does not apply to the portion of Mr. Gregory's proffered testimony regarding his investigative efforts, including Defendant's alleged failure to cooperate with Mr. Gregory's efforts in compiling his audits. Any testimony to that effect is clearly based on Mr. Gregory's personal perception and has nothing to do with his expertise as a CPA.

Plaintiff's main explanation for its failure to comply with the expert disclosure requirement is its staunch belief that Mr. Gregory is, in fact, a lay witness. (Dkt. 104 at 16-17). However, as discussed above, there are portions of Mr. Gregory's proposed testimony and reports that are very clearly expert in nature. Reasonable minds could not differ, especially as to those expert portions of proposed testimony, and Plaintiff should have known to disclose Mr. Gregory as an expert before this juncture.

Similarly, the omission is not harmless. Plaintiff has evaded several of the mandates of Rule 26 disclosure pertaining to experts who provide written reports, such as providing "exhibits that will be used to summarize or support" the witness's opinions, "the witness's qualifications, including a list of all publications authored in the previous 10 years," "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(iii)-(vi). Plaintiff's failure to provide this expert disclosure not only did not put Defendant on notice that he might wish to obtain his own expert, but precludes Defendant from reviewing and preparing with all of the aforementioned disclosure information.

When reviewing preclusion of evidence for abuse of discretion, the Second Circuit considers: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). As discussed above, Plaintiff's contention that it did not comply

with the disclosure requirements because of its unwavering belief that Mr. Gregory is a lay witness is unpersuasive. Next, Mr. Gregory's testimony is quite important—as Plaintiff points out, without Mr. Gregory as a conduit for the many materials he reviewed in compiling summaries of transactions, the trial could last weeks as opposed to the seven days currently scheduled. This would be an egregious waste of Court resources and time. However, the Court cannot say that Defendant would not be prejudiced by having to meet Mr. Gregory's expert testimony, as discussed above. Finally, there is no possibility of a continuance. This trial has been scheduled for almost nine months and is set to begin in two days.

In light of the foregoing, excluding all of Mr. Gregory's testimony does not seem a reasonable solution, particularly since there is no question that Defendant has been aware of his status as a witness for many years, and even had the opportunity to conduct his deposition in September 2013. However, under the circumstances, this Court believes that allowing him to testify as an expert would rise to the level of unfair prejudice. Accordingly, the Court believes that allowing Mr. Gregory to testify as a summary witness, as discussed below, is the most equitable option given the circumstances.

### III. Mr. Gregory May Testify as a Summary Witness

Fed. R. Evid. 1006—Summaries to Prove Content— provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

*Id.* Where a party introduces summary charts under this rule, "the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury." *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977) (citation omitted). "Summary evidence is admissible as long as the underlying documents also constitute admissible evidence and are made available to the adverse party." *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993).

Defendant argues that the Gregory Reports are based upon inadmissible hearsay consisting of varying types of documents of which Mr. Gregory has no personal knowledge. (Dkt. 97-5 at 12-13, 16-17). On the personal knowledge front, courts have found that personal knowledge of the records themselves is sufficient to testify as a summary witness. *See, e.g., United States v. Happ*, No. CR2-06-129(8), 2008 WL 5101214, at *16 (S.D. Ohio Nov. 25, 2008) ("[The witness] has already testified that he prepared his summaries based on his own review of a set of [the] financial records. Therefore, he has the requisite personal knowledge to testify about the summaries."); *United States v. Lemire*, 720 F.2d 1327, 1347 (D.D.C. 1983) ("Rule 602 requires that non-experts testify only as to matters of which they have personal knowledge; its purpose is to assure reliability. In this case, neither Rule 602's literal language nor its overriding purpose was violated. [The witness] did not testify about any of the events underlying the trial: he only summarized evidence about cash flows that several prior witnesses had already offered. As to that evidence, he testified from his personal knowledge of the transcripts and exhibits. Hence Rule 602 does not bar his testimony." (internal citations omitted)); *In re Furr's Supermarkets, Inc.*, 373 B.R. 691, 704 (Bankr. 10th Cir. 2007)

("[T]o the extent the charts prepared by [the summary witness] included information outside of her knowledge, the information was based on . . . business records which had been received into evidence under the business records exception to hearsay rule, or were matters of the record in the case . . . .").

As to the hearsay argument, the evidence upon which Mr. Gregory bases his summary need not be admitted on the basis of Mr. Gregory's firsthand, personal knowledge; it may be admitted through other witnesses. To the extent that the Court is not satisfied at trial that the summaries are based on admissible evidence already before the jury, the Court will rule on the matter then. In the meantime, the undersigned has made clear to Plaintiff's counsel at the hearing on April 20, 2017, that they must be prepared to establish that Mr. Gregory relied on nothing outside of the scope of what comes into evidence in testifying about his summary. The Court will not make a blanket ruling now on the basis of a vague description by Defendant of the so-called "grab-bag" of documents relied on in preparing the Gregory Reports.

Defendant objects to the fact that the financial statements appended to the ESR Report "consist of transaction detail statements that solely list [D]efendant's 'questionable expenses.'" (Dkt. 97-5 at 11). The Eastern District of New York dealt with a similar argument in *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316 (E.D.N.Y. 2013). In *Linde*, the "[d]efendant argue[d] that [the summary witness's] proposed testimony [would] be misleading and confusing because [the] plaintiffs ha[d] cherry-picked a subset of transactions that [would] show a skewed picture of the . . . transactions [at issue]." *Id.* at 333. There, the court concluded, that a "summary may include only

-14-

evidence favoring one party, so long as the witness does not represent to the jury that he is summarizing all the evidence in the case." *Id.* (quoting *United States v. Bishop, III*, 264 F.3d 535, 547 (5th Cir. 2001)). Thus, as long as Mr. Gregory does not represent that he is providing a summary of all of the evidence, he may testify as to the categories of expenses enumerated in his reports.

This does not mean, however, that he may opine as to his conclusions that any categories are questionable, appropriate, inappropriate, or otherwise.[5] As explained in Part I of this Decision and Order, any gloss on the expenses that Mr. Gregory is summarizing would cross into impermissible expert testimony. This finding addresses Defendant's concern that Mr. Gregory's reports and testimony "simply tell the jury what result to reach." (Dkt. 97-5 at 11). Mr. Gregory may testify as to summaries of transactions, but may not offer any kind of conclusion as to what the transactions mean to the case. *See, e.g., In re Furr's Supermarkets*, 373 B.R. at 704 ("The record establishes that [the summary witness] took information from Debtor's business records, and organized the information using a spreadsheet format to assist the bankruptcy court. [The summary witness] *did not interpret* the data she summarized, and *offered no opinion* on the ultimate issue before the court . . . . We conclude that [the summary witness] did not testify as an expert witness." (emphasis added)). To the extent that Defendant argued at the April 20, 2017 hearing that anything contained in the Gregory Reports is inadmissibly expert simply because it relies on the IRS Guidelines in concluding that an

---

[5] This includes any categorization of expenses as "personal." (*See, e.g.*, Dkt. 92-3 at 26).

"unsubstantiated expense" is one without written, rather than oral, substantiation, and that the IRS Guidelines are not common knowledge, this argument was not included anywhere in Defendant's moving papers. "This Court need not consider an argument raised for the first time at oral argument." *Harris v. Wu-Tang Prods., Inc.*, No. 05 Civ. 3157(WHP), 2006 WL 1677127, at *3 (S.D.N.Y. June 16, 2006) (citing *United States v. Barnes*, 158 F.3d 662, 672 (2d Cir. 1998) ("Normally, we will not consider arguments raised for the first time in a reply brief, let alone [at or] after oral argument.")). Even if this issue had been properly raised, the Court is not convinced that the need to substantiate expenses in writing in a professional reimbursement setting is not common knowledge—whether required by the IRS or not.

Finally, at the April 20, 2017 hearing, Defendant's counsel cited to *United States v. Grinage*, 390 F.3d 746 (2d Cir. 2004) and *United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002) as authority standing for the proposition that the Court's contemplated allowance of summary testimony would be in error. As a preliminary matter, *Garcia* deals only with the difference between lay and expert testimony in the context of decoding a conversation about a drug deal. The Court fails to see the relevance to the issue of Mr. Gregory testifying as a summary witness. Second, *Grinage* is distinguishable from the case at hand. There, the Second Circuit vacated a conviction, under an abuse of discretion standard, for allowing the summary/lay testimony of a case agent. The agent testified as to his "experience in narcotics investigations," his "experience in listening to drug traffickers speak on the telephone," and that, "based upon his training and experience, he was familiar with the manner in which drug dealers speak,

a manner that 'is very cautious and often coded.'" 390 F.3d at 747. Approximately 2000 wiretapped phone calls were received into evidence, to which the agent had listened. *Id.* at 747-48. He described the contours of the conspiracy "based upon his 'investigation' and his understanding of the calls." *Id.* He also interpreted some of the calls that were played for the jury, basing his interpretations "on [his] knowledge of the entire investigation," and admitted that said interpretations were "subjective." *Id.* at 748-49. The Court held that this was impermissible summary/lay testimony, noting that, if such a summary/lay witness were allowed, "there would be no need for the trial jury to review personally any evidence at all. . . . [and that] a summary witness . . . could not only tell them what was in the evidence but tell them what inferences to draw from it." *Id.* at 750. "The agent interpreted both the calls that the jury heard and the calls that the jury did not hear." *Id.* "In doing so, he usurped the function of the jury to decide what to infer from the content of the calls . . . ." *Id.* Finally, the agent basing his interpretation, in part, on the totality of his investigation was impermissible because some of the underlying basis for that knowledge might not have been before the jury in admissible form. *Id.* at 750-51.

Here, as addressed above, the Court has and will continue to ensure that Mr. Gregory's *interpretation* of any evidence he summarizes is not permitted before the jury. The Court has also made clear that all summary evidence must be clearly based on evidence that is already before the jury and admissible. Also, unlike the agent in *Grinage*, Mr. Gregory is not basing his summary on his observations of an entire, multifaceted investigation, but on a finite set of documents that he reviewed for the purpose of creating a summary.

The other cases cited in Defendant's moving papers are similarly distinguishable. In *United States v. Citron*, 783 F.2d 307 (2d Cir. 1986), the trial court allowed a summary chart into evidence despite acknowledging the complete lack of foundation as to how the information on the chart was calculated from the "grab-bag" of documents on which the proponent purported to base it. *Id.* at 316-17. The district court's reliance on cross-examination as a cure was inappropriate in that circumstance. *Id.* Here, as Plaintiff's counsel has already been warned, if the Court is not satisfied with the foundation on which the summary is based, the Court will disallow the summary. Likewise, in *United States v. Groysman*, 766 F.3d 147 (2d Cir. 2014), the Second Circuit vacated a conviction and remanded for new trial where the primary evidence in the trial was summary evidence that had been based on—and the government conceded—inadmissible hearsay, inadmissible opinion testimony, and for which the foundation had been provided by a witness without personal knowledge of the matters conveyed. *Id.* at 156, 158-59, 162-63. Again, this Court has indicated that it will vigilantly monitor the trial for these types of errors, but the Court will not preemptively exclude summary evidence on the basis of evidentiary errors that have not yet occurred.

Accordingly, Mr. Gregory may testify as a summary witness at trial.[6]

---

[6] The Court finds Defendant's Fed. R. Evid. 403 argument meritless. The probative value of this evidence, especially in light of this decision's paring of the proposed Gregory testimony, outweighs any prejudicial effect.

## CONCLUSION

For the foregoing reasons, Mr. Gregory may provide non-expert, summary testimony at trial.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: April 25, 2017
Rochester, New York